IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FITBIT, INC., | ) |
|     Plaintiff/Counter-Defendant, | ) |
| v. | ) Case No. 14 C 1267 |
| FITBUG LIMITED and FITBUG, INC., | ) Judge John Robert Blakey |
|     Defendants/Counter-Plaintiffs. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' motion for summary judgment [54] and motion to withdraw the invalidity portion of their motion for summary judgment [83]. For the reasons set forth below, Defendants' motion to withdraw the invalidity portion of their motion for summary judgment [83] is granted, and Defendants' motion for summary judgment [54] is denied.

**I. Background**

    **A. Procedural History**

On February 20, 2014, Fitbit filed suit against Fitbug, Inc. [1] alleging one count of patent infringement of U.S. Patent No. 8,177,260 ("the '260 Patent"). Fitbit amended its complaint on March 11, 2014, adding Fitbug Limited as a defendant [11].[1] Fitbug answered Fitbit's complaint on April 16, 2014, seeking—in the form of a counterclaim—a declaratory judgment that the '260 Patent is invalid and that

---

[1] The Court refers to the Defendants collectively as "Fitbug."

Fitbug has not infringed that patent [20]. Fitbug amended its answer two days later [23]. Discovery opened on April 30, 2014.

Fitbug sought leave to file an oversized motion for summary judgment two days after discovery had opened [25], which Fitbug ultimately filed on May 9, 2014 [36]. Shortly thereafter, Fitbug filed an amended motion for summary judgment [54], adding arguments in response to Fitbit's infringement contentions (which Fitbit provided after Fitbug had already filed its motion). Fitbug seeks summary judgment on two main grounds: (1) that Fitbit cannot state a claim for induced infringement in light of the recent Supreme Court decision of *Limelight Networks, Inc. v. Akami Techs., Inc.*, 134 S. Ct. 2111 (2014); and (2) that the patent at issue is invalid. The motion was fully briefed as of September 8, 2014.

Approximately three months later, on December 12, 2014, Fitbug filed a motion to withdraw the invalidity argument from its motion for summary judgment [83]. Fitbit opposed this motion and, in its response brief, requested reimbursement of fees and costs as a sanction against Fitbug for raising an allegedly frivolous argument [95], pp. 10-11.

**B. Facts**

The Court takes the relevant facts from the parties' Local Rule ("L.R.") 56.1 statements, construing the facts in the light most favorable to the non-moving party (here, Fitbit).[2]

---

[2] Local Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts as to which the movant contends there is no genuine issue and entitles the movant to judgment as a matter of law. The rule permits a movant to file up to 80 separately-numbered statements of undisputed facts. L.R. 56.1(a)(3). The rule also requires

Because Fitbug filed its motion for summary judgment just days after the parties' discovery period had opened, the parties were unable to vet the relevant factual issues prior to briefing this motion. For example, in addition to missing out on all forms of written discovery, the parties were also unable to depose the declarants who the parties' presented in support of their respective Rule 56.1 statements of uncontested material facts. As a result, Fitbit objects to Fitbug's statement of facts in its entirety as premature. Tellingly, in its amended answer [23] to Fitbit's amended complaint [11], Fitbug states that it is without knowledge or information sufficient to form a belief as to the truth of whether Fitbit even owns the '260 Patent.

Nevertheless, if Fitbug withdraws its argument that Fitbit's '260 Patent is invalid, the Court is left with the predominantly-legal issue of whether Fitbit can state a claim for infringement in light of the Supreme Court opinion in *Limelight* (regardless of whether Fitbit actually owns the '260 Patent). The universe of facts relevant to this motion is discrete, and thus the Court will proceed in responding to the legal issues raised in Fitbug's motion. *See Waterloo Furniture Components, Ltd. v. Haworth, Inc.*, 467 F.3d 641, 648 (7th Cir. 2006)("Rule 56 does not require that discovery take place in all cases before summary judgment can be granted. * * * In fact, the Seventh Circuit has noted that 'the fact that discovery is not complete— indeed has not begun—need not defeat [a motion for summary judgment.'")(quoting

---

the non-movant to file a concise response to a movant's statement of facts containing "any disagreement, specific references to the affidavits, parts of the record, and other supporting materials." L.R. 56.1(b)(3)(A).

3

*Am Nurses' Ass'n v. Illinois*, 783 F.3d 716, 729 (7th Cir. 1986)). The Court, however, presents the following (mostly disputed) facts for narrative purposes.

Fitbit and Fitbug are competitors in activity-tracking technology solutions.[3] Fitbit provides activity trackers and related electronics, along with integrated online tools and services, designed to incentivize its customers to improve their health and fitness. Similarly, Fitbug offers products and services that combine portable electronic tracking devices with the Internet to enable users to monitor their activities and manage their nutrition in order to achieve various health-related objectives. Fitbug operates a website (www.fitbug.com) where owners of Fitbug devices can track their activity, input and track their weight, and receive nutrition and fitness advice and information. At various times, Fitbug has offered and sold its Fitbug goods and services through various incentive providers and corporate wellness programs, including The Vitality Group. At least to some extent, Fitbug's wellness partners utilize Fitbug products and Fitbug's website to incentivize their members to take proactive measures to improve their health and fitness. Such measures include seeking preventative health screenings such as mammograms and cholesterol tests, participating in programs that help people stop smoking or lose weight, and engaging in physical exercise. Fitbug currently provides devices and services (including web-based services) to its wellness partners

---

[3] Plaintiff Fitbit is a Delaware corporation with its principal place of business in San Francisco. Defendant Fitbug Limited is a corporation formed under the laws of the United Kingdom with its principal place of business in London, and Defendant Fitbug, Inc. is a Delaware corporation with its principal place of business in Chicago.

4

(including The Vitality Group) to facilitate the wellness partners' members' use of their various wellness programs.

The '260 Patent, which Fitbit alleges was issued on May 15, 2012, is titled "Coupon Redeemable Upon Completion of a Predetermined Threshold of Physical Activity," and includes 24 claimed methods. Fitbug first learned of the '260 Patent on February 19, 2014, when Fitbit sent Fitbug a letter alleging that Fitbug had infringed the '260 Patent. Fitbit now claims that Fitbug induces its wellness partners to infringe six of the 24 claimed methods (1-3, 5, 9 and 21).

## II. Summary Judgment Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Sallenger v. City of Springfield, Ill.*, 630 F. 3d 499, 503 (7th Cir. 2010)(citing Fed. R. Civ. P. 56(c)(2)). In determining whether summary judgment is appropriate, the Court should construe all facts and reasonable inferences in the light most favorable to the non-moving party. *See Carter v. City of Milwaukee*, 743 F. 3d 540, 543 (7th Cir. 2014). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Put another way, the moving party may meet its burden by pointing out to

the Court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. To avoid summary judgment, the opposing party then must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)(internal quotation marks and citation omitted).

For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit–"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *See Koszola v. Bd. of Educ. of City of Chicago*, 385 F. 3d 1104, 1111 (7th Cir. 2004). The "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

### III. Analysis

#### A. Non- Infringement

Fitbug first argues that it is entitled to summary judgment of non-infringement because Fitbit's complaint cannot, as a matter of law, state a claim of induced infringement. More specifically, Fitbug argues that Fitbit's infringement claim alleges *divided* infringement, rather than induced infringement, and the Supreme Court recently confirmed that divided infringement cannot give rise to a claim of patent infringement. *See Limelight Networks, Inc. v. Akami Techs., Inc.*, 134 S. Ct. 2111 (2014).

6

Fitbug argues that Fitbit's infringement claim relies on the combined acts of several entities (*e.g.*, Fitbug and its various wellness partners, including The Vitality Group), and thus fails as a matter of law. Fitbit responds by arguing that Fitbug's argument is factually inaccurate, claiming that it has alleged that Fitbug's wellness partners are the direct infringers who perform every step of the claimed methods and that Fitbug induces its wellness partners to infringe.[4] Alternatively, Fitbit says that Fitbug's argument is legally incorrect, suggesting that it need not establish that all steps of the asserted claims were performed by a single entity so long as it can establish that a single entity "exercised 'control or direction' over the entire process such that every step is attributable to the controlling party." *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008).

Summary judgment on the issue of direct patent infringement is proper "when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Innovention Toys, LLC v. MGA Entm't, Inc.,* 637 F.3d 1314, 1319 (Fed. Cir. 2011). To be liable for direct patent infringement under 35 U.S.C. §271(a), a party must commit all the acts necessary to infringe the patent, either personally or vicariously." *Aristocrat*

---

[4] In certain instances throughout its amended complaint and its subsequent filings, Fitbit alleges that The Vitality Group—allegedly Fitbug's largest partner—is the direct infringer, but in other instances Fitbit refers more generally to Fitbug's "wellness partners" as the purported violators. This discrepancy may be attributable to a lack of discovery, given the timing of the motion for summary judgment. Fitbit so far has alleged that "[a]t least Fitbug's largest wellness partner has been induced to infringe at least claim 1 of the '260 Patent." [11], ¶ 30. As the Court reads Fitbit's complaint, Fitbit is not contending that the combined acts of multiple wellness partners, together, constitute the direct infringement; rather, Fitbit alleges that the independent actions of at least one single partner (The Vitality Group) and possibly other partners as well, constitute direct infringement.

*Technologies Australia PTY Limited v. International Game Technology*, 709 F.3d 1348, 1362 (Fed. Cir. 2013). To infringe a method claim–which is what is at issue here–a person must have "practiced all steps of the claim method." *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009). *See also Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993)("A method claim is directly infringed only by one practicing the patented method.").

"Divided infringement"–where the necessary acts are performed, not by a single party, but by multiple parties–generally has not been enough to impose liability. *E.g., BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed. Cir. 2007). However, a party who itself does not directly perform all of the steps of the method may nonetheless be liable if it induces another party to do so. "To prove induced infringement, the patentee 'must show direct infringement, and that the alleged infringer 'knowingly induced infringement and possessed specific intent to encourage another's infringement.'" *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012)(quoting *i4i Limited Partnership v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010)).

In *Muniauction*, the Federal Circuit reviewed a jury verdict in favor of a patentee in a direct-infringement action brought under 35 U.S.C. § 271(a), where there was an issue as to whether the acts of allegedly-joint infringers (*i.e.*, an online auctioneer of financial instruments and an online bidder) could be combined so as to give rise to a finding of direct infringement by the online auctioneer. 532 F.3d at 1329. The Federal Circuit reversed the jury's finding, holding that the online

8

auctioneer did not sufficiently direct or control the actions of the bidder, defeating a claim of joint infringement. *Id.* (citing *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378–79 (Fed. Cir. 2007)). Importantly here, the court in *Muniauction* confirmed that "where the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, *i.e.*, the 'mastermind.'" *Id.* (quoting *NTP, Inc. v. Research in Motion*, 418 F.3d 1282, 1317–18 (Fed. Cir. 2005)). The court explained that although the general rule is that "direct infringement requires a single party to perform every step of a claimed method," *id.* (citing *BMC Resources*, 498 F.3d at 1380), this rule must be balanced against the equally "well-settled rule" that "'a defendant cannot thus avoid liability for direct infringement by having someone else carry out one or more of the claimed steps on its behalf.'" *Id.* (quoting *BMC Resources*, 498 F.3d at 1379).

*Limelight* was a § 271(b) inducement action in which the Supreme Court reversed an *en banc* panel of the Federal Circuit and held that a defendant "can[not] be held liable under § 271(b) for inducing conduct that does not constitute infringement," 134 S. Ct. at 2117; in other words, "inducement liability may arise 'if, but only if, [there is] * * * direct infringement.'" *Id.* (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341 (1961)). The relevant facts of *Limelight* are as follows: Akamai was an exclusive licensee of the patent at issue, which claimed a method of delivering electronic data using a content delivery

9

network. *Id.* at 2115. Limelight–the alleged infringer–operated a similar content delivery network and carried out several of the steps claimed in the patent, but Limelight's customers were solely responsible for one step in the process (known as "tagging"); and while it was undisputed that Limelight did not perform any of the "tagging," it did provide instructions and offer technical assistance to its customers regarding how to tag. *Id.* In light of the near-contemporaneous *Muniauction* decision in the Federal Circuit, the district court found that there was no direct infringement under § 271(a) because no single party performed every step of the claimed method, and no party exercised control or direction over the entire process such that every step might be attributed to a single party. *Id.* at 2116. This decision held firm until the *en banc* review, where the court elected not to address Limelight's direct infringement liability under § 271(a), and instead found that liability arose under § 271(b), because Limelight carried out some of the steps constituting a method patent and encouraged others to carry out the remaining steps, despite the fact that no single party could be held liable as a direct infringer. *Id.*

The Supreme Court reversed, claiming that "[t]he Federal Circuit's analysis fundamentally misunderstands what it means to infringe a method patent," and holding that an inducement claim under § 271(b) cannot survive unless the performance of all of the patent's steps is attributable to one single person. Notably, the Court did not review the merits of *Muniauction* because *Muniauction* is a direct-infringement case under § 271(a) and the only issue presented in

*Limelight* dealt with induced infringement under § 271(b), but the Court nonetheless "assume[d] [*Muniauction*] to be correct" for purposes of its holding, *id.* at 2119, and thus this Court will address both decisions for purposes of this opinion.

Before reviewing the parties' arguments, the Court notes that Fitbit did not expressly characterize its claim as one alleging induced infringement under § 271(b), opting instead for the generic "infringement" label in naming its claim. [11], p. 4. Fitbug operates under the assumption that Fitbit only alleged induced infringement under § 271(b), *see, e.g.*, [55], p. 10, and Fitbit seems to agree, *see, e.g.*, [65], p. 3 (referring to its claim as one of "induced infringement" and noting that "Fitbit has not alleged direct or contributory infringement"). The allegations are consistent with the assertion of an induced infringement claim, though for obvious reasons they also include allegations of direct infringement.

Reading *Muniauction* and *Limelight* together, the Court finds that in order to establish inducer liability under § 271(b), Fitbit must establish: (a) that some single party (*i.e.*, The Vitality Group) is liable as a direct infringer; and (b) that Fitbug induced the direct infringement. *See, e.g.*, *Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1219 (Fed. Cir. 2014)("to prove induced infringement, the patentee must show that the alleged infringer performs, or induces another party to perform, every single step in the method.")(citing *Limelight*, 134 S. Ct. at 2117). There are two ways Fitbit can establish that the underlying direct infringement occurred: (1) Fitbit must prove that The Vitality Program performs all of the steps of the claimed method; or (2) if the actions of Fitbug and The Vitality Program combine to perform

11

the steps of the claimed method, Fitbit must show that The Vitality Program exercises control or direction over the entire process.

Fitbit makes both arguments. First, Fitbit contends that its complaint, read properly, alleges "that Fitbug's wellness partners (such as Vitality) perform ***every*** step of ***every*** asserted claim and are the direct infringers" under § 271(a), and that Fitbug induces that infringement under § 271(b). [64], p. 4. Second, Fitbit argues that, even if it had alleged that Fitbug performed some steps of the asserted methods and the wellness partners performed the others, it can still establish infringement by showing that The Vitality Group controlled Fitbug (a proposition for which Fitbit claims it would require additional discovery), and then showing that Fitbug induced the wellness partners to infringe pursuant to § 271(b).

To the former, based upon the current record, the Court agrees with Fitbit that its amended complaint, viewed in the light most favorable to Fitbit, is properly read to allege a claim that The Vitality Group performs all of the steps of the claimed method, and is thus properly characterized as the direct infringer. For example, Fitbit included a chart in its amended complaint, [11], p. 7, that breaks down Claim 1 of the asserted '260 patent into three steps,[5] which include: (1) ***issuing*** a coupon, (2) ***receiving*** a request, and (3) ***processing*** the request. In that same chart, Fitbit notes for steps 2 and 3, respectively, that "Fitbug's wellness partners maintain websites which perform this step" and that "Fitbug's wellness

---

[5] "A 'method' in a claim, one of the most common and basic terms of patent drafting, is a 'process,' and 'method' and 'process' have a clear, settled meaning: a set of actions, necessarily taken over time." *Nassau Precision Casting Co., Inc. v. Acushnet Co., Inc.*, 566 Fed. App'x 933, 939 (Fed. Cir. 2014) (citing *Limelight*, 134 S. Ct. at 2117 (noting that "[a] method patent claims a number of steps" to be "carried out")).

partners perform this step." The only point of disagreement stems from the first step, where Fitbit fails to articulate exactly which entity *issues* the coupon, stating instead that Fitbug's wellness partners "issue Fitbug activity trackers" to the users, and the activity trackers gather data that Fitbug then provides to its wellness partners, who then presumably issue the coupon. Fitbit is more eloquent in its initial infringement contentions pursuant to Local Patent Rule 2.2, where it alleges that "Fitbug's wellness partners, including at least Vitality, ***issue*** to end users a coupon * * *, ***receive*** a request to redeem the coupon * * *, [and] ***process*** the request to redeem the coupon." [56-8], Ex. 25(a), pp. 2-4 (emphasis added). Fitbug alleges that the mere mention of its involvement in the process is enough to void Fitbit's claim that The Vitality Group acted alone as the direct infringer. Because Fitbit's case hinges on a showing that Fitbug *induced* its wellness partners into their direct infringement, however, it is not surprising that Fitbug's name would be interwoven with the direct-infringement allegations—not as a direct infringer, but rather as an indirect facilitator.

Alternatively, even if Fitbit's allegations were read as Fitbug reads them (*i.e.*, alleging that the direct infringement is comprised of actions performed by both Fitbug and The Vitality Group), Fitbit could nonetheless establish direct-infringement liability by showing that a single entity directed or controlled the actions that led to the direct infringement. *Muniauction*, 532 F.3d at 1329. On this issue, Fitbit notes that the relevant facts remain in dispute and, having been denied substantive discovery as of yet, it is ill-equipped at this point in the proceedings to

speak authoritatively regarding the precise relationship between Fitbug and The Vitality Group.

Fitbug does not argue in its motion for summary judgment that Fitbit has failed to establish the elements of inducement under § 271(b); instead, Fitbug only argues that Fitbit's inducement claim fails because Fitbit failed to establish an underlying direct infringement under § 271(a) as required by *Limelight*. Having determined that Fitbit's direct-infringement claim does not fail as a matter of law, the Court rejects Fitbug's non-infringement ground for summary judgment.

**B.  Invalidity**

Fitbug also argues that, to the extent Fitbit can state a claim of induced infringement, its infringement claim nonetheless fails because the '260 Patent is invalid. Fitbit opposed the argument on its merits, and argued in the alternative that Fitbug's invalidity claim should be denied without prejudice under Federal Rule of Civil Procedure 56(d) to allow the parties to conduct additional discovery on the issue. Fitbug later moved to voluntarily dismiss its invalidity argument without prejudice to allow for the requested discovery, but Fitbit shifted gears and opposed the motion, claiming that Fitbug was unjustly benefitting from the fact that Fitbit had already taken its position on the invalidity argument.

Although Fitbit raises a fair point regarding its unnecessary efforts in responding to Fitbug's premature invalidity argument, any harm to Fitbit will be short-lived, as Fitbit will be able to recast its legal arguments once discovery is complete. If Fitbit's position is meritorious now (*i.e.*, that the '260 Patent is not

14

invalidated by Fitbug's alleged prior art), it will be equally meritorious when presented at a later date. Accordingly, the Court grants Fitbug's motion to withdraw the invalidity portion of its motion for summary judgment without prejudice [83], and declines Fitbit's request for reimbursement of fees and costs. The Court disregards Fitbug's invalidity argument for purposes of this Order. Fitbug is free to re-raise the issue in a subsequent motion, to the extent it may do so consistent with its obligations under Federal Rule of Civil Procedure 11.

**IV. Conclusion**

For these reasons, the Court grants Fitbug's motion to withdraw the invalidity portion of its motion for summary judgment without prejudice [83], and denies Fitbug's motion for summary judgment [54]. The motion is denied with prejudice as to the legal question of whether Fitbit can state a claim of induced infringement as a matter of law under *Limelight*, and the motion is denied without prejudice pursuant to Federal Rule of Civil Procedure 56(d) as to the fact-bound issue of whether the relationship between Fitbug and its wellness partners is sufficient to establish a claim for inducement under 35 U.S.C. § 271(b).

Date: September 9, 2015

ENTERED:

United States District Judge